[Civ. Nos. 4068, 4069. First Appellate District, Division One.—January 18, 1922.]

## HAWI MILL AND PLANTATION COMPANY, LIMITED (a Corporation), Petitioner, *v.* T. B. W. LELAND, Coroner, etc., et al., Respondents.

[1] CLAIM AND DELIVERY—PROPERTY IN CUSTODIA LEGIS—LIABILITY TO EXECUTION.—Personal property taken in an action upon claim and delivery and thereafter delivered to the plaintiff therein under the provisions of section 514 of the Code of Civil Procedure remains *in custodia legis* after its delivery by the officer executing the process to the plaintiff so as not to be subject to a writ of execution issued on behalf of and at the instance of the plaintiff on the original attachment suit which preceded and compelled the replevin suit, or issued or sought to be levied for the enforcement of a judgment obtained either in that original action or in any subsequent action by the same plaintiff for the enforcement of the same obligation.

[2] ID.—SEIZURE OF REPLEVIED PROPERTY—MANDAMUS—ASSIGNMENT OF INTEREST—EFFECT OF.—A plaintiff in a claim and delivery action to whom personal property is delivered upon giving the required bond may compel the redelivery of such property taken from him under a writ of execution issued at the instance of a creditor of the defendant in the claim and delivery action, even though such plaintiff has parted with all his right, title, and interest in and to said property, since the plaintiff still has a sufficient interest in the *mandamus* proceeding for the protection of his replevin bond.

[3] ID.—ASSIGNMENT OF INTEREST IN REPLEVIED PROPERTY—SEIZURE UNDER EXECUTION—MANDAMUS TO COMPEL REDELIVERY—RIGHT OF ASSIGNOR.—A plaintiff in a claim and delivery action to whom personal property is delivered upon giving the required bond may compel the redelivery of such property taken from him under a writ of execution issued at the instance of a creditor of the defendant in the claim and delivery action, even though such plaintiff has parted with all his title in the property, since section 385 of the Code of Civil Procedure permits the continuance of an action in the name of the original party after an assignment of interest.

PROCEEDINGS on application for Supplementary Writs of Mandate. Writs granted.

The facts are stated in the opinion of the court.

McCutchen, Olney, Willard, Mannon & Greene for Petitioner.

Knight, Boland, Hutchinson & Christin for Respondents.

RICHARDS, J.—This is an application for supplementary writs of mandate to carry into full and further effect the peremptory writs of mandate issued out of this court in the above-entitled proceedings on October 25, 1921.

The facts leading up to the issuance of those writs and the supplementary facts occurring thereafter and upon which the present application is predicated are briefly stated as follows: On April 26, 1921, Geo. A. Moore & Co. started an action against Hidalgo Plantation & Commercial Co., La Zaculapa Plantation Co., and La Zaculapa Plantation and Harrison Co. for the recovery of an alleged indebtedness of $88,607.92, in which action an attachment was issued and levied upon the two lots of coffee involved in the two proceedings before this court. Thereafter the Hawi Mill and Plantation Company filed third party claims with the sheriff levying said attachment as to both lots of coffee who, after receiving an indemnity bond against said Geo. A. Moore & Co., refused to deliver up the same to the said claimant, upon which refusal the latter, on August 27, 1921, commenced two actions against said sheriff and also against Geo. A. Moore & Co. to recover possession of said two lots of coffee and in these actions presented the statutory claim and delivery bonds sufficient in form to require the sheriff to deliver said property to the coroner, who was the statutory officer entitled to serve process and take delivery of said property in said actions. The defendants in these two replevin suits failed to present a valid redelivery bond within the time provided by the statute. In the meantime, and on the sixteenth day of September, said Geo. A. Moore & Co. commenced another action against the said defendants, who were the corporations made parties to its original action, and also against certain other defendants, who were alleged to be the trustees of said defendant corporations, the latter having forfeited their charters under the revenue and taxation laws of this state, to recover from said defendants the sum of $138,607.92. This sum, though larger than that sued

56 Cal. App.—15

for in the original action, is admittedly an indebtedness arising out of the same transaction; and in such suit the said plaintiff, Geo. A. Moore & Co., through immediate answers filed by said defendants admitting said indebtedness, procured a judgment in its favor to be entered on the same date of the filing of such suit for the amount of said indebtedness and immediately thereafter, and on September 17, 1921, caused an execution to be issued and levied upon said two lots of coffee in the hands of the coroner at the time. Thereupon the original proceedings for the issuance of writs of mandate were instituted by the plaintiff in said replevin suits in this court to compel the delivery to it of the coffee involved in said suits under the provisions of section 514 of the Code of Civil Procedure. After a hearing upon the merits in both of said proceedings this court issued peremptory writs of mandate commanding the delivery of both of said lots of coffee to the plaintiff in said replevin suits. Thereafter, and on October 31, 1921, said writs of mandate were duly served upon the said sheriff, then in the possession of said property by virtue of said writ of execution, and also upon the defendants in certain proceedings, and the said sheriff thereupon and in response to said writs delivered said coffee to the petitioner in said proceedings, but immediately thereafter, and purporting to act under and by virtue of an *alias* writ of execution issued upon the last above-mentioned judgment, the said sheriff levied the same upon 1,971 bags of said coffee and took possession of the same, which possession he still holds as such sheriff· and by virtue of said *alias* writ of execution, and refuses to deliver to said petitioner herein upon its demand, hence the application for supplementary writs of mandate herein. In response to said application the respondents herein have filed answers alleging, in substance, that the two original lots of coffee were, on October 29, 1921, in storage in Southern Pacific Warehouse No. 2, then being operated by the Haslett Warehouse Company, a corporation. That on said twenty-ninth day of October, 1921, and prior to the service of the original writs of mandate, as above set forth, the applicant herein assigned and transferred all of its right, title, and interest in and to said two lots of coffee to one J. H. Beamer; and that immediately after the redelivery of said coffee to the applicant herein by the said sheriff in re-

sponse to said writs the said Haslett Warehouse Company delivered to said Beamer 1,205 bags of said coffee, who thereupon received and removed the same from said warehouse; and said Haslett Warehouse Company at the said time also delivered to said Beamer its negotiable warehouse receipt for the removing of the remaining bags of said coffee, which negotiable warehouse receipt, the respondents allege, has by the said Beamer been assigned, delivered, and transferred to other parties. That by virtue of the foregoing facts the applicant herein has no longer any right, title, or interest in any portion of said two lots of coffee; that the *alias* execution aforesaid was levied by said sheriff upon said 1,971 bags of coffee after the aforesaid transfers of said coffee had taken place and hence at a time when the said remaining portion of the coffee was subject to the levy of said *alias* writ. The respondents further allege that on the thirty-first day of October, 1921, and after the aforesaid levy of said *alias* execution had been made, the said Geo. A. Moore & Co. commenced an action against said Haslett Warehouse Company under the provisions of section 18 of an act of the legislature, approved March 19, 1909 (Stats. 1909, p. 440), and amended May 11, 1919 (Stats. 1919, p. 398), entitled: "An act to make uniform the law of warehouse receipts," and that an answer had been filed therein by the said Haslett Warehouse Company to the effect that it held in storage said coffee subject to a negotiable warehouse receipt issued to one J. H. Beamer, but upon which the *alias* execution above referred to had been levied by the sheriff, who had placed one of his deputies in charge of said coffee and had assumed control over the same. That thereafter said J. H. Beamer had presented his said warehouse receipt and demanded possession of said coffee, but that the said sheriff, acting through his said deputy, had refused to allow said defendant to make delivery of the same.

Upon the hearing upon these applications and the answer thereto, the applicant presented and filed a written joinder of said J. H. Beamer and Williams-Diamond & Co., to whom portions of said coffee were alleged to have been assigned, in the supplementary petitions of the applicant herein for a further writ of mandate and a request that the relief herein sought be granted to said applicant. There was also presented and filed at the same time a demurrer to the

answer of the respondents upon the ground that the same did not state facts sufficient to constitute a defense on the part of said respondents or any of them. A motion to strike out portions of said answers was also presented and filed. The matters thus put in issue may, we think, be fully tested out upon the demurrer to the respondents' answers, and since they all relate to the fundamental question as to whether personal property taken in an action upon claim and delivery and thereafter delivered to the plaintiff in said action, under the provisions of section 514 of the Code of Civil Procedure, remains *in custodia legis* after its delivery by the officer executing the process to the plaintiff so as not to be subject to a writ of execution issued on behalf of, and at the instance of, the plaintiff on the original attachment suit which preceded and compelled the replevin suit, or issued or sought to be levied for the enforcement of a judgment obtained either in that original action or in any subsequent action by the same plaintiff for the enforcement of the same obligation. Upon the hearing upon and submission of the original applications herein for a writ of mandate, this court held that such personal property was *in custodia legis* while the same was in the custody of the officer executing the process in the claim and delivery action and that the plaintiff in said action was entitled to have delivered to it said property by said officer, or by anyone to whom he had delivered it, notwithstanding the fact that a writ of execution had been attempted to be levied upon said property at the instance of the plaintiff in the action or actions instituted by it to recover upon the original obligation of certain parties not parties to these proceedings and in which action or actions the attachment or the later execution had been levied. This court, therefore, issued the original writs of mandate herein directing the sheriff to deliver the said property, and the whole thereof, to the applicant herein. In these proceedings for the issuance of supplementary writs of mandate this court is asked to go at least so far as to define the rights of the applicant in respect to the property involved therein after the same has passed into its possession by virtue of the execution of the original writs of mandate. This the court is prepared to do.

[1] An examination of the authorities bearing upon this question discloses the following condition and leads to the

following conclusions: Prior to the adoption of the Code of
Civil Procedure in the state of New York in 1848, the courts
of that state had decided that personal property taken under
a writ of replevin could not be levied upon through a writ
of execution, the property being regarded as *in custodia legis*
so long as the replevin suit was pending, the bond given
therein being regarded as a substitute for the goods. In
*Acker* v. *White*, 25 Wend. (N. Y.) 614, the execution creditor
was not the original party whose attachment of the property
had led to the replevin suit. The Code of Civil Procedure
of the state of New York, adopted in 1848, embodied the
provisions of the earlier New York statute relating to actions
in the nature of replevin under which the above case was
decided. (N. Y. Code Civ. Proc., sec. 206 et seq. to sec. 217.)
And these provisions have been substantially retained in the
New York Code of Civil Procedure through its various
enlargements and amendments down to the present time.
The provisions of the New York Code of Procedure upon
this subject were substantially incorporated in the California
Code of Civil Procedure upon its original adoption in 1872
and have been since, in substance, retained therein. This
derivation of the provisions of our code from the New York
code renders very persuasive the decisions of the New York
courts upon our courts in relation to this subject. The case
of *First Nat. Bank etc.* v. *Dunn et al.*, 97 N. Y. 149 [49
Am. Rep. 517], was an action wherein, after the sheriff had
taken certain personal property upon a writ of replevin and
delivered the same to the plaintiff in the replevin suit, he
claimed the right to retake the same under and by virtue
of a writ of execution which had been placed in his hands
for enforcement against said property in another action.
The New York court of appeals in that case, after an ex-
haustive review of the cases, not only in New York, but also
in other jurisdictions, held that the property in question
remained *in custodia legis* after it had passed into the pos-
session of the plaintiff in the replevin suit so as not to be
leviable upon at the suit of a subsequent execution creditor
of the party from whose custody the property had been
taken in the replevin suit. In so deciding the court cited
with approval the case of *Hagan* v. *Lucas*, 35 U. S. (10 Pet.)
400 [9 L. Ed. 470, see, also, Rose's U. S. Notes], as deciding
that property taken on a writ of replevin is in the custody

of the law, both while held by the officer· and after delivery
to the plaintiff, and so remains during the pendency of the
action of replevin awaiting the final disposition of the court
in said action.  The reasons given by both the New York and
the federal courts for this holding are the same, and are
that the law which requires the plaintiff in a replevin suit
to give a bond for the return of the property to the person
from whom it is sought to be taken as a condition of the
plaintiff's present and temporary possession thereof ·during
the pendency of the replevin suit, would be inconsistent and
ineffectual if, after he had made himself and his sureties
liable upon such bond for the return of the 'property, it
could be taken from him through the levy of an execution
issued in some other action, and the obligation of his bond
thus rendered it impossible of fulfillment.  As the court in
the New York case last above quoted says: "Can a result so
repugnant to equity and propriety be sanctioned? Is the
law so inconsistent as to authorize the means by which the
discharge of an obligation is defeated and at the same time
exact a penalty for the failure?" and. the court further
states in conclusion of the whole matter: "The whole action
of replevin and its modern substitute are alike in the nature
of the proceedings *in rem.*  The court fastens upon the
identical property and holds it subject to its own ultimate
disposition.  If by its own rules it ·cannot hold the *res*
against other process the action loses its ·character and be-
comes merely one in damages."  Other cases upholding the
same principle are *Pipher* v. *Fordyce,* 88 Ind. 436; *Rhines* v.
*Phelps,* 3 Gilm. (Ill.) 455; *Selleck* v. *Phelps,* 11 Wis. 380;
*Stvut* v. *Follette,* 64 Ind. 365; *Bates etc. Nat. Bank* v. *Owen,*
79 Mo. 429; *Tremaine v. Mortimer* (N. Y. Super. Ct.), 7
N. Y. Supp. 681; *Williamson* v. *Nealy,* 119 N. C. 339 [25
S. E. 953]; *Beagle* v. *Smith,* 50 Neb. 446 [69 N. W. 956].
It is true that there are cases holding to the contrary of the
foregoing doctrine which have been quite industriously col-
lated by the respondents herein, but these, we conclude from
our examination, either represent views depending upon
particular statutes differing from our own or represent the
minority view of the courts upon this subject.  The text-
writers, considering this conflict in authority, have adopted
the majority view of the cases as the sounder law.  In
Freeman on Executions (third edition), section 135, we find

it stated that: "The taking of property by an officer acting under a writ of replevin places it within the custody of the law and, therefore, precludes it from being levied upon under an execution. No levy can be permitted which if effective might defeat the object of the action of replevin." In 23 Corpus Juris, at page 359, the rule is thus stated and as thus stated has exact application to the instant case, viz.: "Where, after a levy on property by attachment or execution, such property is released from the custody of the officer under a bond given to try the right thereto . . . the property is still regarded as being in the custody of the law and is not subject to seizure and sale under a junior execution." The respondents, however, contend that if this doctrine is to be given full application to such a state of facts as is presented here it would have the effect of preventing those who might have superior rights to those of the plaintiff in replevin from having recourse to such property and would thus be a violation of the federal constitution. We do not consider that the exigencies of this case call for such a conclusion. The bond which the plaintiff in replevin has given runs in favor of the defendant in that action, that is to say, the person from whose custody the property was taken, and requires the return of the property or its equivalent in money to such person in the event of the plaintiff's failure to recover judgment in said action. The person to whom such eventual return must be made is the sheriff who, upon again receiving such property or its money equivalent, would hold the same in his official capacity and subject to whatever process was in his hands affecting the same, just as though no such replevin suit had been brought, and the rights, not only of the original attaching creditor but also of all subsequent execution creditors who had placed their process in his hands, would be thus amply protected through the giving of the replevin bond. [2] Respondents further contend that the facts set forth in the answer and admitted for the purpose of demurrer show that the applicant has parted with all of its right, title, and interest in the property in question by the transfer of the warehouse receipt therefor to Beamer, and by the further transfer of the same by said Beamer to the other persons named, and that, therefore, the plaintiff is no longer a party in interest in this proceeding and hence not entitled to a supplemental writ

of mandate herein. There are several answers to this proposition, the first being that the plaintiff, even if it had parted with its title to said property, would still have a sufficient interest in the proceeding to seek this remedy therein for the protection of its replevin bond. This must be so in order to avoid those very inconsistencies, which, as the foregoing cases indicate, would otherwise exist, since the purpose for which a party claiming to be the owner thereof has in view in seeking to obtain the possession of particular property by means of a replevin suit is that of putting said property to its ordinary uses in the way of its consumption or sale. To deny the plaintiff this consequential right through exposing the property to other process at once upon its leaving his own possession would be to deny to him the very fruits of his action and to render his remedy of claim and delivery a vain and useless form. [3] The second reason is to be found in the terms of section 385 of the Code of Civil Procedure, which, in the case of a transfer of interest, permits the continuance of the action in the name of the original party. This section of the code has been given special application to this proceeding by the fact that the persons to whom the plaintiff in the replevin suit is alleged to have transferred its interest in the property involved therein have appeared herein to join the applicant in the remedy herein sought and to request that the applicant herein be given the relief sought, notwithstanding such transfer of interest. As to that portion of the respondents' answer which avers the institution of a suit against the warehouseman under the provisions of section 18 of the act entitled, "An act to make uniform the law of warehouse receipts," we cannot conceive how the prosecution of such an action could possibly affect the right of the applicant in these proceedings under the principles above enunciated defining its right to the custody and control of the property in question during the pendency of the replevin suit.

For the foregoing reasons we are of the opinion that the applicant herein is entitled to the relief prayed for in its supplementary application herein. Let writs issue accordingly.

Kerrigan, J., and Tyler, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 16, 1922.

All the Justices concurred.

Lennon, J., was absent and Richards, J., *pro tem.*, was not acting.